## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **GLORIA A. ETHRIDGE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **5:04CV230 (DF)** |
| | : | |
| **METROPOLITAN LIFE** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R

Currently pending before the Court in this action to recover long-term disability benefits is a motion for summary judgment filed by Defendant Metropolitan Life Insurance Company (tab 10). Plaintiff Gloria Ethridge filed suit against Defendant in the Superior Court of Washington County, Georgia, on June 16, 2004, seeking recovery of long-term disability benefits, bad-faith penalties, and attorney's fees under Georgia law. Defendant removed the suit to this Court, asserting that Plaintiff's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1001, *et seq.* In its summary-judgment motion, Defendant argues that it is entitled to judgment as a matter of law for three reasons: (1) Ethridge's state-law claims are preempted by ERISA and should therefore be dismissed because she failed to recast her

complaint after removal to plead a federal cause of action under ERISA's civil enforcement provisions; (2) Defendant's decision to terminate (and not reinstate) Ethridge's disability benefits was legally correct; and (3) the circumstances surrounding this litigation do not support an award of attorney's fees and costs to Ethridge under 29 U.S.C.A. § 1132(g).  For the following reasons, Defendant's motion for summary judgment is granted.

## I.    BACKGROUND

In February 2003, Plaintiff Gloria Ethridge suffered a back injury after falling in her bathroom.  At the time of the accident, she was employed by CitiFinancial (a division of Citigroup, Inc.) as a branch manager in the company's Sandersville, Georgia office.  Ethridge worked her last day at CitiFinancial on May 12, 2003, and, on May 19, as a result of her worsening back condition, she underwent surgery for spinal stenosis.  Following her surgery, Ethridge received short-term disability benefits until August 12, 2003, under an insurance policy written by Defendant Metropolitan Life Insurance Company ("MetLife").  Ethridge received the maximum amount of short-term benefits under the MetLife policy.  Once her short-term benefits expired, Ethridge became eligible for long-term disability ("LTD") benefits through the Citigroup Long Term Disability Plan ("Plan").  LTD benefits under the Plan were payable by MetLife.

2

In early August, a MetLife representative named Jessica Puma contacted Ethridge and asked her to complete a series of forms necessary for processing her LTD-benefits application and to return the forms by August 21. Ethridge did so. Puma then contacted Ethridge's physician, Wayne D. Beveridge, M.D., and requested that he submit his notes from Ethridge's August 15 office visit. Puma informed Dr. Beveridge that these notes should be sent by August 25, so as not to disrupt the payment of Ethridge's benefits. Dr. Beveridge replied by fax, indicating that there were no physical therapy notes and adding that Ethridge had been referred to Cynthia Roche for physical therapy in Sandersville.

Dr. Beveridge did send MetLife the progress notes from Ethridge's August 19 office visit, in which he stated that Ethridge was having "a very slow recovery" and that she "still has a lot of trouble with back pain with sitting." He also noted that, "I do not think she is quite ready to return to work." According to these notes, Ethridge was supposed to contact Dr. Beveridge again in three weeks so that he could continue to monitor her progress.

In a letter dated August 28, MetLife notified Ethridge that her application for LTD benefits had been approved for a period lasting from August 13 to September 8. MetLife further advised Ethridge that she and Dr. Beveridge would

be responsible for submitting updated medical information upon request. MetLife made subsequent attempts to obtain updated information regarding Ethridge's injury. Those attempts were unsuccessful.

As a result, MetLife sent Ethridge another letter, dated October 7, which informed her that her LTD benefits had been terminated and that her file was being closed. MetLife told Ethridge it was closing her file because her physical therapist, Cindy Roche, had not submitted medical updates that MetLife had requested, by fax and telephone, on three separate occasions. The October 7 letter stated that MetLife twice tried to contact Ethridge to let her know that the information requested from Roche had not been received. Neither attempt was successful. MetLife informed Ethridge that she had a right to appeal its decision to terminate her LTD benefits.

Dr. Beveridge thereafter forwarded to MetLife his progress notes concerning Ethridge. These notes showed that Ethridge continued to have difficulty in her legs (September 30), that she "want[ed] tests," *e.g.* a myelogram/CT scan (September 30), and that she was unhappy with her physical therapist, Ms. Roche (October 30). MetLife reviewed these additional documents, but concluded that they were not sufficient to justify reinstating Ethridge's LTD benefits. MetLife

informed Ethridge of its decision in a letter dated November 13. Again, Ethridge was reminded of her right to appeal MetLife's decision.

Ethridge's attorney wrote letters to MetLife on November 14 and February 24, 2004, imploring the company to pay Ethridge the LTD benefits to which she was entitled. Her attorney also forwarded to MetLife a letter written by Dr. Beveridge on February 9, in which he stated that as of January 19 (the date of Ethridge's last checkup with Dr. Beveridge) Ethridge was not ready to return to work, but that he expected to reevaluate her condition in six to eight weeks. Ethridge appealed the termination of her LTD benefits in a letter to MetLife dated March 31, 2004. She enclosed Dr. Beveridge's February 9 letter and informed MetLife that she would send along any additional documentation necessary for a thorough evaluation.

MetLife forwarded Ethridge's appeal to Thomas Tawyer, who, in turn, referred Ethridge's file to Amy Hopkins, M.D., an Independent Physician Consultant who was charged with answering the following question: "Does the medical information in the claim file [of Gloria Ethridge] document functional limitations that precluded sedentary work subsequent to 9/8/03?" (CL 0068). Dr. Hopkins concluded that nothing in the file "objectively documented"

a physical impairment that would have precluded Ethridge from working her job as a CitiFinancial branch manager after September 8, 2003. Her appeal was thus denied and her LTD benefits were not reinstated. This lawsuit followed.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). The Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but may not make credibility determinations or weigh the evidence. *See* **Anderson**, 477 U.S. at 249. Finally, "the evidence presented cannot consist of conclusory allegations or legal conclusions." **Avirgan v. Hull**, 932 F.2d 1572, 1577 (11th Cir. 1991).

## III.   DISCUSSION

## A.   ERISA Preemption

Ethridge's complaint, originally filed in the Superior Court of Washington County, Georgia, contained state-law claims only.   Those claims were for: (1) breach of contract (recovery of benefits); (2) bad-faith penalties; and (3) attorney's fees.   MetLife, invoking this Court's federal-question jurisdiction under 28 U.S.C.A. § 1331, removed Ethridge's lawsuit on the basis of complete ERISA preemption.[1]  Following removal, Ethridge did not amend her complaint to assert a federal cause of action under ERISA.   Pointing to Ethridge's failure to amend, MetLife argues that her complaint should be dismissed as a matter of law (since it contains no federal claim) and that judgment should be entered in its favor. The result urged by MetLife, however, is not consistent with the doctrine of complete preemption.

Where a defendant, on the basis of complete ERISA preemption, removes to federal court a complaint alleging state-law claims only (thereby invoking the Court's federal-question jurisdiction), the Court—if it finds that the state-law claims are truly preempted—may *sua sponte* construe those claims as federal claims

---

[1] As opposed to "defensive" ERISA preemption, a broader type of preemption which does not provide a basis for federal-question jurisdiction.

under ERISA's civil enforcement provisions.  *See* 29 U.S.C.A. § 1132.  This is so because a finding of complete preemption effectively transforms the preempted state-law claims into federal claims; thus, the plaintiff need not recast her complaint in order to maintain the lawsuit in federal court.  *See* ***Ervast v. Flexible Products Co.***, 346 F.3d 1007, 1014 (11th Cir. 2003); *see also* ***Aetna Health Inc. v. Davila***, 124 S. Ct. 2488, 2495 (2004).  Because the Court finds that Ethridge's state-law claims are completely preempted,[2] it will construe them as federal claims seeking relief under § 1132.

## B.    Standard of Review

"ERISA provides no standard for reviewing decisions of plan administrators or fiduciaries."  ***Williams v. Bellsouth Telecommunications, Inc.***, 373 F.3d 1132, 1134 (11th Cir. 2004) (citing ***Firestone Tire & Rubber Co. v. Bruch***, 489 U.S. 101, 109 (1989)).  But three standards of review have been judicially developed.  Each standard requires the reviewing court to indulge in a different level of deference with respect to both benefit determinations and plan

---

[2] Ethridge concedes that her claims are completely preempted by ERISA.  Pl.'s Resp. to Def.'s Mot. for Summ. J., tab 14, at 7.  A state-law claim is completely preempted when: (1) there is a relevant ERISA plan; (2) the plaintiff has standing to sue under that plan; (3) the defendant is an ERISA entity; and (4) the complaint seeks compensatory relief akin to that available under 29 U.S.C.A. § 1132.  *See* ***Butero v. Royal Maccabees Life Ins. Co.***, 174 F.3d 1207, 1212 (11th Cir. 1999); *see also* ***Davila***, 124 S. Ct. 2488, 2498 n.4 (2004).  Each of these conditions is satisfied here.

interpretations made by plan administrators and fiduciaries.  The three standards are: "(1) *de novo* where the plan does not grant the administrator discretion [*i.e.*, does not exercise discretion in deciding claims;] (2) arbitrary and capricious [where] the plan grants the administrator [such] discretion; and (3) heightened arbitrary and capricious where [the plan grants the administrator such discretion but] . . . [he has] . . . a conflict of interest."  **Id.** (alterations in original).

To determine whether an administrator is vested with the discretionary authority to make benefit-eligibility determinations or to interpret the terms of the plan, courts look to the language of the plan documents.  *See* **HCA Health Serv. of Georgia, Inc. v. Employers Health Ins. Co.**, 240 F.3d 982, 993 (11th Cir. 2001).  Here, the language of the summary plan description clearly grants MetLife discretionary authority to make eligibility determinations under the Plan and to interpret its terms.  Def.'s Mot. for Summ. J., doc 10, Ex. 2, SPD at ii ("MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract.  This includes the Group Policy, Certificate and any Amendments.").  Such discretion would ordinarily require the Court to review MetLife's benefit determination under the arbitrary-and-capricious standard of review.  But as both parties concede, MetLife, in administering the Plan, operates

under a conflict of interest, since it both insures the benefits under the Plan and serves as the Plan's claims administrator. Therefore, the Court must review MetLife's decisions regarding Ethridge's LTD benefits under the "heightened" arbitrary-and-capricious standard. *See **Williams v. BellSouth Telecommunications, Inc.**, 373 F.3d 1132, 1135 (11th Cir. 2004); see also **Brown v. Blue Cross and Blue Shield of Alabama, Inc.**,* 898 F.2d 1556, 1562 (11th Cir. 1990). The parties agree that this is the correct standard of review, but disagree about how the standard should be applied.

The Eleventh Circuit, in **Williams**, outlined a systematic approach for analyzing "virtually all ERISA-plan benefit denials" as follows:

(1)   Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)   If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)   If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)   If no reasonable grounds exist, then end the inquiry and reverse

10

the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)    If there is no conflict, then end the inquiry and affirm the decision.

(6)    If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

373 F.3d at 1138.

As suggested by the first step in this analysis, "regardless of whether arbitrary and capricious or heightened arbitrary and capricious review applies, the court evaluates the claims administrator's interpretation of the plan to determine whether it is 'wrong.'" *HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir. 2001).  The Court will now undertake the analysis set forth in *Williams*, beginning with a *de novo* review of MetLife's decision to terminate Ethridge's LTD benefits.

To be eligible for LTD benefits under the Plan, a claimant must first demonstrate to MetLife that she is in fact disabled and that she became disabled while covered under the Plan.  A Class II employee—like Ethridge—is considered "disabled" under the Plan if, "due to . . . accidental injury," she is "receiving Appropriate Care and Treatment from a Doctor on a continuing basis" and:

11

1.     during [her] Elimination Period and the next 60 month period, [she is] unable to earn more than 80% of [her] Predisability Earnings at [her] Own Occupation for any employer in [her] Local Economy; or

2.     after the 60 month period, [she is] unable to earn more than 60% of [her] Predisability Earnings from any employer in [her] Local Economy at any gainful occupation for which [she is] reasonable [sic] qualified taking into account [her] training, education, experience and Predisability Earnings.

Def.'s Mot. for Summ. J., doc 10, Ex. 2, SPD at 9.

Medical care is considered "Appropriate Care and Treatment" only if it satisfies each of the following conditions:

1.     it is received from a Doctor whose medical training and clinical experience are suitable for treating [the claimant's] Disability;

2.     it is necessary to meet [the claimant's] basic health needs and is of demonstrable medical value;

3.     it is consistent in type, frequency and duration of treatment with relevant guidelines of national medical, research and health care coverage organizations and governmental agencies;

4.     it is consistent with the diagnosis of condition; and

5.     its purpose is maximizing [the claimant's] medical improvement.

*Id.* at 9-10.

As part of the claims procedure, the employee must, within three months after the end of the Elimination Period,[3] submit to MetLife proof of disability. Def.'s Mot. for Summ. J., doc 10, Ex. 3, SPD at 22.  Such proof includes (but is not limited to) documentation indicating the cause of the disability, the date the disability started, and the prognosis of the disability.  *Id.*  The Plan also requires that a claimant provide "other items [MetLife] may reasonably require in support of [the claimant's] Disability," including "proof of continuing Disability."  If such supporting (and satisfactory) documentation is not provided within 60 days after it is requested, a claim for disability benefits "may be denied."  *Id.* at 22-23.

MetLife argues that its decision to terminate Ethridge's LTD benefits was proper because (1) Ethridge failed to provide support for her contention that her injury prevented her from working, and because (2) Ethridge, contrary to the requirements of the Plan, did not receive appropriate care and treatment on a continuing basis.  Ethridge maintains that MetLife chose an arbitrary date on which to terminate her benefits, that it failed to give due regard to the evidence before it, and that it failed to take into account her continuing treatment.

---

[3] "Elimination Period" is defined in the summary plan description as "13 weeks of short term disability benefits."  Def.'s Mot. for Summ. J., doc 10, Ex. 2, SPD at 2.

MetLife insists that its decision to terminate and not reinstate Ethridge's benefits was *de novo* right and urges the Court to so conclude, thereby ending the Court's inquiry. Ethridge argues that the termination of her benefits was *de novo* wrong and that the Court should therefore proceed with the rest of the steps in the ***Williams*** analysis. For the following reasons, the Court concludes that MetLife's decision to terminate Ethridge's benefits was *de novo* right. Accordingly, the Court ends its review at the first step of the ***Williams*** analysis and affirms MetLife's decision.

After Ethridge filled out and submitted to MetLife the requisite paperwork associated with her application for LTD benefits, her treating physician, Dr. Beveridge, received a fax communication from MetLife requesting that he forward Ethridge's physical therapy notes from her August 15 office visit. Dr. Beveridge responded that there were no physical therapy notes and that Ethridge had been referred to a physical therapist in her hometown of Sandersville. He did, however, forward to MetLife his progress notes from Ethridge's August 19 visit. In those notes, Dr. Beveridge observed that Ethridge had had a "slow recovery," that she "still has a lot of trouble with back pain with sitting," and that "[he] d[id] not think she's quite ready to return to work." Ethridge's application for LTD benefits was approved.

14

Shortly thereafter, Ethridge received a letter from MetLife informing her that it would "periodically require updated medical information and [would] contact you and/or your physician."  In order to monitor her progress and to evaluate the need for an extension of her benefits, MetLife attempted to contact Ethridge's physical therapist, Cynthia Roche, on several occasions,[4] requesting updated medical information.  Roche did not respond.  MetLife then attempted to contact Ethridge to tell her that the requested medical information had not been received.  Ethridge could not be reached, and MetLife never got the information it needed to determine whether an extension of benefits was warranted.

MetLife sent Ethridge a follow-up letter dated October 7, indicating that her claim file would be closed because she had failed to provide any medical records or other information to support her claim for continued LTD benefits.  MetLife informed Ethridge of her right to appeal its decision.

One month later, on November 7, Dr. Beveridge forwarded to MetLife office notes from September 22, September 30, and October 30.  The September 22 note revealed that Ethridge had not shown up for her scheduled appointment. The September 30 note stated that Ethridge was still having difficulty in her legs

---

[4] MetLife contacted Roche by telephone and fax on September 18, 24, and 26.

and that she wanted to have some tests performed.  Finally, the October 30 note stated that Ethridge did not report to Dr. Beveridge, but instead called to say that she was dissatisfied with her physical therapist.  Dr. Beveridge tried to contact Ethridge the following day to tell her that he was not aware of another physical therapist in her location.  He received no answer.

On November 13, MetLife wrote a letter to Ethridge telling her that it had reviewed the information in her claim file again, including the most recent notes from Dr. Beveridge, but that:

> [t]he information received does not indicate the expected duration of your disability, restriction and limitations and your current symptoms including the severity.  We do not have an objective medical update to support that you continue to be disabled from your position as a branch manager.  Therefore your claim will remain denied.[5]

Def.'s Mot. for Summ. J., doc 10, Ex. 8, CL 0107.

-----

[5] The date on which her LTD benefits were terminated is somewhat unclear.  The November 13 letter quoted above is inconsistent on this point: *compare* "Your claim has been terminated effective 9/9/03" (CL 0106) *with* "Your claim was terminated on 10/7/03, as we did not receive medical documentation." (*Id.*)  In yet other documents in the record, the date is listed as September 8.  In her brief opposing MetLife's summary-judgment motion, Ethridge makes much of the fact that MetLife terminated her benefits on September 9, a date which she regards as arbitrarily selected and as demonstrating that MetLife was bent on denying her claim no matter what the medical evidence showed.  The Court does not attach such significance to the termination date, since it is clear from the record that MetLife continued to provide Ethridge ample opportunities to provide medical evidence to support her claim.  She was unable to do so.  MetLife's continued willingness to evaluate Ethridge's new submissions demonstrates that, had she been able to document her disability with sufficiently objective medical information, MetLife was open to the possibility of reinstating her LTD benefits.

Ethridge appealed MetLife's denial by letter on March 31, 2004.  As part of

her appeal, Ethridge enclosed a letter written by Dr. Beveridge on February 9,

2004, in which he stated the following:

> Following surgery [Ethridge] had relief of the severe constant pain in
> both legs, but has persisted with residual pain in the right posterior leg
> all the way into the calf.  The pain is relieved with sitting or lying
> down, and worsened by standing or walking. [Ethridge underwent] a
> myelogram/CT scan of the lumbar spine on 10/14/03, and this
> revealed the area where she had surgery was well decompressed and
> there was no evidence of nerve compression. . . .  At the time of her
> [last office] visit on January 19th we did not feel like she was ready to
> return to work.

*Id.* at CL 0101.

MetLife had a physician-consultant—board certified in the fields of Internal

Medicine and Occupational Medicine—review Ethridge's file on appeal.  The

physician noted that, prior to January 19, 2004, Ethridge's last office visit to Dr.

Beveridge was on August 19, 2003.  There was no documented history of ongoing

medical treatment during the interim five months.  According to Dr. Beveridge's

own assessment of Ethridge on her January 19 visit, her discomfort improved with

sitting and her CT/myelogram showed that she suffered no root compression.

Given Ethridge's infrequent visits to Dr. Beveridge, her physical therapist,  or any

other doctor, and given the sedentary nature of her job at CitiFinancial, the

physician concluded that "this file does not objectively support [plaintiff's] inability

to perform the material duties of her own occupation on a full-time basis, without restrictions or limitations, after 9/8/03." *Id.* at 0064-65.

In a letter dated June 1, 2004, MetLife informed Ethridge that its decision to terminate her LTD benefits had been upheld on appeal and that no further appeals would be considered. *Id.* at 0063.

Having reviewed *de novo* the record MetLife had before it during the period for which Ethridge sought to receive LTD benefits, the Court cannot say that MetLife's termination of Ethridge's benefits was wrong. Other than her subjective complaints about the pain in her legs and Dr. Beveridge's conclusory and unsupported statements about her inability to return to work, the record contains no objective indication that Ethridge was disabled after September 2003. Neither does the record reflect that she was receiving "Appropriate Care and Treatment from a doctor on a regular basis," as required by the Plan. To the contrary, her sporadic contact with healthcare providers of any sort belies her assertion that she was disabled as defined by the terms of the Plan.

In light of the dearth of objective medical evidence in the record supporting Ethridge's claim for benefits, the Court concludes that MetLife's decision to terminate (and its subsequent decisions not to reinstate) her benefits was proper under the Plan. The Court, therefore, ends it inquiry there and affirms MetLife's decision.

### C.     Attorney's Fees Under § 1132(g)

Ethridge also seeks to recover her attorney's fees resulting from this litigation.  In any suit to recover plan benefits under § 1132, the district court may, in its discretion, "allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C.A. § 1132(g) (West 1999).  The Eleventh Circuit has identified a number of relevant factors for district courts to consider when presented with a claim for attorney's fees and costs under § 1132(g):

(1)     the degree of the opposing part[y's] culpability or bad faith;

(2)     the ability of the opposing part[y] to satisfy an award of attorney's fees;

(3)     whether an award of attorney's fees against the opposing part[y] would deter other persons acting under similar circumstances;

(4)     whether the part[y] requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [and]

(5)     the relative merits of the parties' positions.

*Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1344 (11th Cir. 2001).

Having considered these factors in light of the circumstances of this case, the Court concludes that an award of attorney's fees and costs to Ethridge would be an inappropriate exercise of its discretion.  Accordingly, Ethridge's claim for attorney's fees is denied.

19

## IV.   CONCLUSION

For the reasons stated above, MetLife's Motion for Summary Judgment (doc 10) is hereby **GRANTED.**

SO ORDERED, this 21st day of November, 2005.

> **/s/ Duross Fitzpatrick**
> DUROSS FITZPATRICK, JUDGE
> UNITED STATES DISTRICT COURT

DF/sew